**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

R.T., a minor, by and through her parents and next friends, JONATHAN THOMPSON and ELIZABETH THOMPSON,

Plaintiff,

v. Case No.: ______________________

THE SCHOOL BOARD OF ORANGE COUNTY, FLORIDA
A/k/a Orange County Public Schools

Defendant.
_____________________________________________/

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT

**Plaintiff R.T**., a minor, by and through her parents and next friends, Jonathan Thompson and Elizabeth Thompson, sues Defendant, The School Board of Orange County, Florid a/k/a Orange County Public Schools, and alleges:

## NATURE OF THE ACTION

1. This is a disability-access case concerning a public-school student's right to attend school accompanied by her trained service dog.

2. R.T. is a fifteen-year-old student with documented disabilities who attends Horizon High School, an Orange County Public Schools ("OCPS") public school.

3. R.T. uses a trained service dog named **Elliot**.

4. Elliot was trained through New Horizons Service Dogs to perform disability-related work for R.T., including a Deep Pressure Therapy ("DPT") task known as **"Blanket."**

5. When R.T. recognizes that she is becoming overwhelmed or that a disability-related episode may be developing, she can lie down and orally command "Blanket," at which point Elliot lies on top of her and applies his body weight as trained deep pressure to help reduce and mitigate escalating anxiety and dysregulation.

6. Elliot's trained task is preventative and mitigating. He is not alleged to be a seizure-alert dog, and he is not trained to independently intervene after R.T. has progressed into a severe medical episode or becomes unconscious.

7. OCPS knew before the events giving rise to this action that R.T. used Elliot as a service dog and knew the disability-related function he performed.

8. Elliot accompanied R.T. at school for approximately three years, including at Hamlin Middle School and Horizon High School.

9. On May 21, 2026, Horizon High School Principal Brian Sanchez Corona informed R.T.'s parents that Elliot would be categorically prohibited from accompanying R.T. on school property during the 2026–27 school year.

10. The stated basis for that decision included alleged barking, growling, aggression, disruption, and lack of control during incidents in which R.T. was experiencing significant disability-related medical distress.

11. The same May 21 letter nevertheless permitted Elliot to continue accompanying R.T. for the remainder of the then-current school year.

12. R.T.'s parents disputed the factual basis for the exclusion, requested the records and evidence upon which OCPS relied, requested preservation of relevant evidence, and asked OCPS to identify the administrative or ADA/Section 504 process through which they could challenge the exclusion.

13. As of August 12, 2026, the family had not received the incident evidence or documentation requested to support OCPS's allegations concerning Elliot.

14. On August 6, 2026, OCPS enforced the exclusion when R.T. and her family attended Horizon High School's Hawk Walk.

15. On August 11, 2026, the first day of R.T.'s sophomore year, OCPS again enforced the exclusion.

16. Assistant Principal Travis Bryant told the family that R.T. could remain at school but Elliot could not.

17. Bryant subsequently confirmed in writing that, based upon Principal Sanchez Corona's letter and guidance from OCPS's legal department, Elliot was not permitted on campus.

18. Faced with the choice between attending school without the trained service animal she uses because of her disability or leaving school with Elliot, R.T. left.

19. R.T. has therefore been denied meaningful access to her ordinary in-person public-school program with her service animal.

20. Plaintiff seeks prompt declaratory and injunctive relief permitting R.T. to return to school accompanied by Elliot, subject to the lawful requirements applicable to service animals under Title II of the Americans with Disabilities Act.

**JURISDICTION AND VENUE**

21. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

22. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

23. This Court has authority to grant temporary, preliminary, and permanent injunctive relief under the ADA, Section 504, and Federal Rule of Civil Procedure 65.

24. Venue is proper under 28 U.S.C. § 1391 because Defendant resides in this District and substantially all events giving rise to this action occurred in Orange County, Florida.

25. Orange County is within the Middle District of Florida, and the relevant events occurred within the Orlando Division.

## PARTIES

26. Plaintiff R.T. is a minor student enrolled at Horizon High School.

27. R.T. is a qualified individual with a disability within the meaning of Title II of the ADA.

28. R.T. is an individual with a disability within the meaning of Section 504.

29. Defendant The School Board of Orange County, Florida operates Orange County Public Schools, including Horizon High School.

30. Defendant is a "public entity" subject to Title II of the ADA.

31. Defendant receives federal financial assistance and operates programs and activities subject to Section 504 of the Rehabilitation Act.

## R.T.'S DISABILITIES AND OCPS'S KNOWLEDGE

32. R.T. has documented neurological, psychiatric, and other disabilities, including functional neurological symptom disorder with abnormal movement and panic disorder.

33. R.T.'s February 26, 2026, Section 504 Plan recognizes that her impairments substantially limit, among other things, concentrating, learning, and regulating emotions and behaviors.

34. The Section 504 Plan provides accommodations addressing those limitations, including sensory supports, advance notice of transitions and changes when possible, access to a safe person and safe place, and a Safety Plan.

35. OCPS's own Section 504 conference notes establish that District personnel were aware of Elliot and discussed his use by R.T.

36. Those notes record discussion of Deep Pressure Therapy and the parents' report that Elliot provides DPT and support to R.T.

37. During the February 26, 2026 Section 504 meeting, the family and its advocate also discussed documenting R.T.'s disability-related use of and access to Elliot and the school-day supports associated with that use. Regardless of whether Elliot was ultimately listed as a formal Section 504 accommodation, OCPS had actual knowledge that R.T. used Elliot because of her disabilities and understood the trained disability-related function the family described.

**ELLIOT'S TRAINED DISABILITY-RELATED TASK**

38. Elliot was obtained through New Horizons Service Dogs and trained to perform disability-related work for R.T.

39. One of Elliot's trained tasks is Deep Pressure Therapy.

40. The trained command for that task is "Blanket."

41. When R.T. is able to recognize that anxiety, sensory overload, dysregulation, or another episode is escalating, she lies flat and orally gives Elliot the "Blanket" command.

42. In response to the command, Elliot lies upon R.T. and applies his body weight as trained deep pressure.

43. The task is intended to help calm R.T. and mitigate the anxiety, sensory overload, and dysregulation that can precede a more serious episode.

44. R.T. also uses the trained DPT task during recovery after episodes when appropriate.

45. Elliot does not perform the "Blanket" task merely by being present with R.T.; he performs a specific trained physical action in response to R.T.'s command.

46. Elliot is not alleged to be trained to detect seizures before they occur.

47. Elliot is not alleged to be trained to independently initiate medical intervention during an active panic attack or seizure-like episode.

48. Elliot is not alleged to be trained to respond independently after R.T. loses consciousness.

49. This distinction explains language in the February 2026 Section 504 meeting notes stating that Elliot was not trained to provide intervention during an active panic attack while also documenting that he was trained to provide DPT and support.

50. Whether Elliot performed DPT after R.T. had already progressed into unconsciousness during a particular school incident does not accurately describe the trained task for which R.T. uses him.

## ELLIOT'S HISTORY AT SCHOOL

51. Elliot accompanied R.T. in the public-school environment for approximately three years before the categorical exclusion challenged here.

52. That history included attendance at Hamlin Middle School and Horizon High School.

53. OCPS was therefore familiar with both R.T. and Elliot before issuing the May 21, 2026 exclusion.

54. OCPS's May 21 letter itself refers to Elliot's presence on school campuses over multiple years.

55. Elliot has never had a housebreaking accident while at school.

56. Elliot has never bitten, attempted to bite, lunged at, or physically injured any student, employee, or other person while at school.

## THE MAY 21, 2026, CATEGORICAL EXCLUSION

57. On May 21, 2026, Principal Sanchez Corona sent R.T.'s parents a written notice concerning Elliot.

58. The letter alleged multiple disturbances involving R.T. and Elliot, including incidents during random weapons screenings.

59. The letter alleged that Elliot had hindered persons attempting to assist R.T., growled, displayed aggression, disrupted school activity, vocalized unnecessarily, and had not remained under the handler's control.

60. The letter also asserted that Elliot had failed to provide "actual services" to R.T. during the incidents relied upon by the school.

61. Based on those allegations, Principal Sanchez Corona stated that Elliot would **not** be allowed to accompany R.T. on campus during the following school year.

62. The exclusion was prospective and categorical rather than limited to removal during a particular incident of allegedly uncontrolled behavior.

63. Notwithstanding the allegations of aggression and disruption, the May 21 letter expressly permitted Elliot to continue accompanying R.T. for the remainder of the 2025–26 school year.

64. The stated purpose for allowing Elliot to remain was to give the family time over the summer to prepare R.T. to return to school without her service dog.

**THE FAMILY DISPUTES THE FACTUAL BASIS FOR THE BAN**

65. On May 26, 2026, R.T.'s parents disputed the factual assertions supporting the exclusion.

66. They requested all incident reports, complaints, staff notes, security records, administrative records, communications, and video or other evidence concerning the conduct attributed to Elliot.

67. They specifically requested the dates, locations, and factual descriptions of the incidents allegedly demonstrating disruption, aggression, growling, unsafe behavior, lack of control, or failure to provide service.

68. They also requested identification of any prior warnings, corrective actions, behavioral interventions, or remediation efforts provided to the family.

69. The family advised OCPS that Elliot had attended school with R.T. for approximately three years.

70. The family further advised OCPS that instances in which Elliot vocalized or became excited had occurred when R.T. was experiencing medical distress and was unconscious or otherwise medically unable to direct him.

71. The family asked OCPS whether the May 21 determination constituted a final administrative decision and requested identification of any appeal, review, grievance, ADA, Section 504, or reconsideration process.

72. The family renewed those requests in August 2026.

73. As of August 12, 2026, the family had not received the evidence requested to substantiate OCPS's allegations concerning Elliot's behavior.

74. On August 16, 2026, OCPS Associate General Counsel Sarah J. Kopesky responded to the family's renewed requests concerning the exclusion of Elliot.

75. Kopesky expressly informed the family that OCPS has no internal appeal process for contesting the removal of a service animal.

76. Thus, after repeatedly asking OCPS to identify a procedure through which the service-animal exclusion could be challenged, R.T.'s parents were informed by Defendant's legal counsel that no such internal appeal process exists.

## AUGUST 6, 2026 — OCPS ENFORCES THE BAN

77. On August 6, 2026, R.T. and her parents attended Horizon High School's Hawk Walk so that R.T. could obtain her schedule, retrieve school-related items, and meet her teachers.

78. R.T. was accompanied by Elliot.

79. While R.T. and her family were meeting with a counselor, Assistant Principal Travis Bryant entered and informed the family that Principal Sanchez Corona had directed that Elliot was not permitted on campus.

80. R.T.'s parents explained that Elliot was her service dog and disputed OCPS's authority to exclude him.

81. Bryant maintained that Elliot was required to leave.

82. The family complied with the directive and left campus.

83. Bryant thereafter confirmed the exclusion in writing.

84. His written communication stated that, based upon Principal Sanchez Corona's letter and guidance from OCPS's legal department, Elliot was not permitted to be on campus.

## AUGUST 11, 2026 — FIRST DAY OF SCHOOL

85. On August 11, 2026, R.T. attempted to attend the first day of her sophomore year accompanied by Elliot.

86. Jonathan Thompson walked R.T. and Elliot to the school entrance.

87. Moments after Jonathan began walking away, R.T. sent him a text message stating simply: **"help."**

88. Jonathan immediately returned to the entrance.

89. School personnel advised the family that their prior guidance remained that Elliot was not permitted at school.

90. The family again met with Assistant Principal Bryant.

91. Jonathan explained that Elliot is R.T.'s service dog and accompanies her because of her disability.

92. Bryant stated that R.T. could remain at school but Elliot had to leave.

93. The family complied with OCPS's directive.

94. R.T. did not attend school without Elliot.

95. Bryant again memorialized the decision in writing.

96. Bryant's August 11 email stated that, based on Principal Sanchez Corona's prior letter and guidance from OCPS's legal department, Elliot was not permitted on campus.

97. R.T. was crying intensely and was significantly distressed by being prevented from beginning her sophomore year accompanied by her service animal.

## CONTINUING EXCLUSION AND PRESENT INJURY

98. After being turned away on August 6 and again on August 11, R.T.'s parents concluded that repeatedly bringing her to campus only to have her and Elliot rejected in front of other students was causing additional humiliation and distress.

99. Beginning August 12, R.T. remained home rather than repeatedly subject herself to the same confrontation.

100. R.T. and her parents have not withdrawn her from Horizon High School, requested that she be withdrawn, enrolled her in another school or virtual program, or elected home education.

101. R.T. remains enrolled at Horizon High School and intends to attend her regular in-person program there.

102. R.T. is presently not attending because OCPS continues to enforce its decision prohibiting Elliot from accompanying her to school.

103. As of August 12, OCPS had offered no alternative permitting R.T. to attend her ordinary school program with Elliot.

104. The only option communicated by the school was for R.T. to attend without him.

105. R.T.'s parents requested access to her school laptop so that they could attempt to access coursework and communicate with teachers while the dispute was being resolved.

106. On August 13, 2026, Assistant Principal Travis Bryant informed R.T.'s parents that R.T. had been designated **"DNE (Did Not Enter)"** and that Horizon High School would not issue her a district laptop because she had not entered school and begun attending classes.

107. Bryant further advised that Horizon High School does not provide virtual instruction through its brick-and-mortar program and that a family seeking virtual instruction would need to enroll the student in a separate approved virtual-education program.

108. Defendant has thus designated R.T. as DNE and denied the district-issued laptop requested by her parents to mitigate the educational consequences of the continuing exclusion, even though R.T. remains enrolled at Horizon High School and intends to attend her regular in-person program there.

109. R.T.'s sophomore schedule includes ENG2, Animal Science, Geography, ASL, World History, Drawing 2, and Biology 1 Honors.

110. Each school day the exclusion continues, R.T. loses access to live classroom instruction, interaction with her teachers, interaction with her peers, and participation in her regular public-school program.

111. Her parents report that the exclusion has caused substantial emotional dysregulation, crying spells, and detachment.

112. The family has reached out to a behavioral-health provider to reinitiate therapy.

## TITLE II'S SERVICE-ANIMAL REQUIREMENTS

113. Title II of the ADA provides that no qualified individual with a disability shall, by reason of disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

114. Defendant is a public entity subject to Title II.

115. DOJ regulations define a service animal as a dog individually trained to do work or perform tasks for the benefit of an individual with a disability where the work or tasks are directly related to the disability. 28 C.F.R. § 35.104.

116. Elliot performs a specific trained physical task directly related to R.T.'s disabilities.

117. Title II generally requires a public entity to modify its policies, practices, and procedures to permit the use of a service animal by an individual with a disability. 28 C.F.R. § 35.136(a).

118. The regulation permits a public entity to require removal where the animal is out of control and the handler does not take effective action to control it or where the animal is not housebroken. 28 C.F.R. § 35.136(b).

119. To the extent Defendant contends that Elliot presents a "direct threat," Title II requires an individualized assessment based upon objective evidence and consideration of the nature, duration, severity, probability, and possible mitigation of the asserted risk. 28 C.F.R. § 35.139.

120. Defendant has instead imposed a categorical school-year exclusion preventing R.T. from attending with Elliot.

121. Defendant has enforced that exclusion on at least two occasions immediately preceding or beginning the 2026–27 school year.

122. Defendant's enforcement has presently excluded R.T. from meaningful participation in her ordinary in-person school program unless she relinquishes use of her service animal while at school.

**THIS ACTION DOES NOT SEEK IDEA/FAPE RELIEF**

123. The gravamen of this action is disability discrimination and equal access to a public facility and program with a service animal.

124. Plaintiff is not asking this Court to determine the educational methodology, special-education placement, or substantive adequacy of a free appropriate public education provided to R.T.

125. Plaintiff seeks the same basic disability-access right that would apply if R.T. sought to enter another state or local government facility accompanied by a qualifying service animal.

126. The relief sought is therefore directed to Defendant's exclusion of R.T.'s service animal and the resulting denial of equal access, rather than to the adequacy of special-education services.

127. Under *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017), IDEA exhaustion is not required where the gravamen of an ADA/Section 504 action is disability discrimination rather than denial of FAPE.

128. The factual circumstances in *Fry* likewise involved a public school's refusal to permit a child to attend with her trained service dog.

## COUNT I - TITLE II OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12132

129. Plaintiff incorporates paragraphs 1 through 128.

130. R.T. is a qualified individual with a disability.

131. Defendant is a public entity subject to Title II.

132. R.T. is otherwise qualified to attend Horizon High School and participate in Defendant's educational programs and activities.

133. Elliot is individually trained to perform disability-related work for R.T., including the "Blanket" Deep Pressure Therapy task described above.

134. Defendant knew of R.T.'s disability and her use of Elliot as a service dog.

135. Defendant nevertheless adopted and enforced a categorical prohibition preventing Elliot from accompanying R.T. at school.

136. Defendant enforced that prohibition on August 6 and August 11, 2026.

137. Defendant expressly informed the family that R.T. could remain at school only if Elliot left.

138. Defendant has therefore conditioned R.T.'s access to her public-school program upon relinquishing the use of her service animal.

139. Defendant has failed to reasonably modify its policies, practices, or procedures as required by 28 C.F.R. §§ 35.130(b)(7) and 35.136.

140. Defendant's categorical exclusion has denied R.T. equal access to Defendant's services, programs, and activities because of disability.

141. Defendant's conduct has caused and continues to cause R.T. actual and imminent injury.

142. Unless enjoined, Defendant will continue excluding Elliot, thereby forcing R.T. to choose between attending public school without her service animal or remaining out of school.

143. Plaintiff has no adequate remedy at law for the continuing loss of equal access to her daily educational program.

144. Plaintiff is entitled to declaratory, preliminary, and permanent injunctive relief.

**COUNT II - SECTION 504 OF THE REHABILITATION ACT**

**29 U.S.C. § 794**

145. Plaintiff incorporates paragraphs 1 through 144.

146. R.T. is an individual with a disability within the meaning of Section 504.

147. R.T. is otherwise qualified to participate in Defendant's educational programs and activities.

148. Defendant receives federal financial assistance and is subject to Section 504.

149. Defendant has actual knowledge of R.T.'s disability.

150. Defendant has actual knowledge that R.T. uses Elliot because of her disability.

151. Defendant nevertheless conditions R.T.'s access to her ordinary school program upon her attending without Elliot.

152. R.T. would otherwise be permitted to attend Horizon High School; the barrier at issue arises because she seeks to attend accompanied by her disability-related service animal.

153. Permitting R.T. to attend with a qualifying service animal is a reasonable disability-related modification.

154. Defendant's refusal to permit that modification excludes R.T. from, denies her the benefits of, and subjects her to discrimination in a federally funded public-school program because of her disability and disability-related need for a service animal.

155. Defendant's continuing exclusion is causing ongoing and irreparable injury.

156. Plaintiff is entitled to declaratory, preliminary, and permanent injunctive relief under Section 504.

**COUNT III - DECLARATORY RELIEF**

**28 U.S.C. §§ 2201–2202**

157. Plaintiff incorporates paragraphs 1 through 156.

158. An actual and immediate controversy exists between the parties.

159. Defendant maintains that Elliot is prohibited from accompanying R.T. at Horizon High School.

160. Defendant has twice enforced that position and has confirmed it in writing.

161. R.T. maintains that Elliot is her trained service animal and that Defendant's categorical exclusion violates Title II of the ADA and Section 504.

162. The dispute is presently preventing R.T. from attending her regular public-school program with Elliot.

163. The controversy is concrete, continuing, and appropriate for judicial determination.

164. Plaintiff therefore requests a declaration that Defendant's categorical exclusion of Elliot, as applied to R.T. on the facts established in this action, violates Title II of the ADA and Section 504.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

165. R.T. is presently missing school because Defendant will not permit her to attend accompanied by Elliot.

166. The injury recurs every school day. Defendant has further compounded that ongoing injury by designating R.T. as DNE and denying the district-issued laptop her parents requested in an effort to mitigate the educational consequences of her exclusion from school.

167. Lost classroom instruction, lost peer interaction, disruption of R.T.'s disability-related stability, and denial of equal access cannot be fully remedied after the fact by an award of money.

168. Defendant permitted Elliot to accompany R.T. for approximately three years and expressly allowed him to remain through the end of the 2025–26 school year even after issuing the May 21 letter.

169. The requested relief would restore the access arrangement that existed before Defendant's categorical prospective ban while leaving intact Defendant's lawful authority under 28 C.F.R. § 35.136 to respond to an actual circumstance satisfying the regulation.

170. The public interest favors compliance with federal disability law and uninterrupted access to public education.

171. Plaintiff therefore seeks immediate preliminary relief, followed by permanent relief after adjudication on the merits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A. **Declare** that Defendant's categorical exclusion of Elliot from accompanying R.T. at Horizon High School, under the circumstances established in this action, violates Title II of the Americans with Disabilities Act;

B. **Declare** that Defendant's exclusion of R.T. from equal participation in its programs unless she relinquishes use of Elliot violates Section 504 of the Rehabilitation Act;

C. **Temporarily and preliminarily enjoin** Defendant, its officers, employees, agents, and persons acting in concert with it from enforcing the May 21, 2026, categorical prohibition against Elliot accompanying R.T. at Horizon High School and other OCPS programs and activities;

D. Require Defendant to permit R.T. to attend Horizon High School and participate in school programs and activities accompanied by Elliot, subject to the lawful service-animal requirements of Title II and 28 C.F.R. § 35.136;

E. **Permanently enjoin** Defendant from categorically excluding Elliot in violation of Title II and Section 504;

F. Award Plaintiff reasonable attorneys' fees, litigation expenses, and costs as authorized by law, including 42 U.S.C. § 12205 and 29 U.S.C. § 794a;

G. Retain jurisdiction as necessary to enforce the Court's declaratory and injunctive relief; and

H. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**THE ALLEN FIRM, P.A.**

By: /s/ Frank T. Allen-------------

**FRANK T. ALLEN, ESQUIRE**

2852 Maguire Rd., Ste. 130
Ocoee, Florida 34761
Telephone: (407) 481-8103
Florida Bar No. 0033464
Attorney for Plaintiff